1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    STEVEN F. HARLOW,                        No.  2:17-CV-0922 MCE DB

12                    Petitioner,

13          v.                                 FINDINGS AND RECOMMENDATIONS

14    THE PEOPLE OF THE STATE OF
      CALIFORNIA,
15
                      Respondent.
16

17

18          Petitioner, a state prisoner, proceeds pro se and in forma pauperis with a petition for a writ

19    of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a judgment of convictions entered

20    on January 25, 2013 in the Sacramento County Superior Court. Petitioner stands convicted of

21    twelve counts of lewd and lascivious acts with a child under fourteen years of age, three counts of

22    lewd and lascivious acts with a child fourteen years of age, and one count of using a minor to

23    perform prohibited acts. Petitioner claims: (1) the trial court's admission of uncharged sexual

24    offenses violated state evidentiary rules and his Fourteenth Amendment due process rights, and

25    defense counsel's failure to object constituted ineffective assistance; (2) the trial court's

26    admission of Child Sexual Abuse Accommodation Syndrome ("CSAAS") evidence violated his

27    Fourteenth Amendment due process rights, and defense counsel's failure to object on due process

28    grounds constituted ineffective assistance; (3) the use of a hypothetical question during expert

                                                      1

testimony to which defense counsel did not object violated his rights under the Sixth and Fourteenth Amendments; and (4) trial counsel further rendered ineffective assistance by failing to properly prepare for trial. For the reasons set forth below, it is recommended that the petition be denied.

# BACKGROUND

## I.    Facts Established at Trial

The California Court of Appeal for the Third Appellate District provided the following summary of the facts presented at trial:

> Defendant married the minor's mother when the minor was two years old. When she was 15 years old, the minor told her mother, during a heated argument, that defendant had been molesting her for four years. That was the first time the minor told anyone about the abuse.
>
> The mother contacted the police and defendant was placed under arrest.
>
> The mother told police she saw defendant looking at images of naked prepubescent girls. At a subsequent interview, the mother said she confronted defendant about seeing child pornography on his computer and defendant did not deny it. According to the mother, defendant said he found prepubescent girls attractive looking.
>
> Police interviewed the minor three times. The minor provided more details about the sexual abuse each time police interviewed her, but she did not recant her accusations against defendant. There were inconsistencies in the minor's accounts and she could not specifically remember what happened during each incident of molestation.
>
> Police searched defendant's home and seized a white massager, which the minor told detectives defendant had used on her. Police also seized defendant's red Samsung cell phone, a computer, a digital camera, and three DVDs containing adult pornography. No data could be retrieved from defendant's cell phone. There was evidence on the computer that someone had visited websites containing sexually explicit materials, and one website possibly contained child pornography, but there was no child pornography on the computer or the digital camera. The computer contained a program called Evidence Eliminator, which can be used to permanently erase files from the computer and can be set to automatically run at specified times.
>
> At trial the minor testified defendant began to molest her when she was 11 years old. The first act of molestation occurred in "the downstairs" room, where the family kept a computer that defendant used primarily. Defendant showed the minor pornography on the computer while she sat on his lap, and defendant touched the minor's vaginal area with his hand, under the minor's clothes. Defendant

masturbated while touching the minor. After the first incident, defendant touched the minor in the same manner multiple times a month. Defendant ejaculated sometimes.

Defendant began molesting the minor in the living room when she was 11 or 12 years old. The acts in the living room occurred multiple times a month. The minor described a typical molest incident in the living room as involving defendant rubbing her stomach, then moving his hand to her breasts or her vaginal area, sometimes over her clothing but most of the time under her clothing. The minor said defendant may have put his fingers inside her vagina a couple of times. Defendant last touched the minor's vaginal area and breasts about a week before his arrest.

Defendant put a massager on the minor's vaginal area more than once in the living room. He masturbated while using the massager on the minor. Sometimes defendant ejaculated.

Defendant began molesting the minor in her bedroom when she was about 11 or 12 years old and continued until she was 15 years old. The minor described an average incident of molestation in her bedroom as follows: Defendant entered her bedroom after everyone else went to bed. He rubbed the minor's back or stomach, then her breasts or vaginal area. He ejaculated during one of these night visits. He molested the minor in her bedroom about seven or eight times a month.

Defendant also took photographs of the minor in her bedroom on more than one occasion. The minor agreed to go to her room with defendant to have her photographs taken because she was scared to say no, even though defendant never threatened her or instructed her not to tell anyone. Defendant used his red cell phone or a black and silver camera to take the photographs. The minor was naked in most of the photographs. Defendant instructed the minor to get on her hands and knees for some of the photographs. He masturbated sometimes while taking the photographs. He ejaculated five times while taking photographs of the minor. He showed the minor some of the photographs he had taken of her on his computer. The photographs showed the minor's vagina, butt, and bare breasts. Defendant stopped taking photographs of the minor when she was about 14 years old.

The minor identified People's exhibit number 16, which police recovered from defendant's computer, as a photograph focusing on her butt. The photograph was taken with a Samsung SCH-U450 device.

The minor testified everything she had described to the jury was true. She said she loved defendant despite what he was doing to her. She never tried to avoid him. She hoped he would change. She maintained she still loved and missed defendant.

The minor's mother testified she saw defendant rub the minor's back and saw the minor sitting on defendant's lap watching something on the computer, but she never saw defendant do anything that made her

suspect he was molesting the minor. According to the mother, the minor never appeared afraid of defendant and never seemed uncomfortable or afraid of going to her bedroom when defendant was at home.

The mother testified she lied to police about seeing child pornography on the family's old computer. She admitted she was angry with defendant and wanted to hurt him. She also said she was not thinking clearly at the time police interviewed her. The mother said she never saw child pornography on defendant's computer, and she never heard defendant say he found prepubescent girls attractive. She admitted she still loved defendant and wanted him released.

The prosecutor played audio recordings of the mother's statements to police during the trial. The mother acknowledged the voice on the recordings belonged to her. She agreed she sounded calm in the recorded interviews, and it sounded like she took the time to think things through before she spoke.

The People called Dr. Anthony Urquiza as an expert on CSAAS. We will discuss Dr. Urquiza's testimony in sections II and III *infra*.

Defendant testified at the trial. He denied committing the charged offenses. He agreed the minor sat on his lap and he sometimes rubbed the minor's back, upper chest, stomach, or legs. But he did not think there was anything inappropriate about those acts. Although he viewed pornography on his computer, he never did so when his children were around and he never looked at child pornography. Defendant denied ever watching pornography with the minor, getting aroused when he rubbed her, taking photographs of her while she was naked, using a massager on her, masturbating in front of her, or ejaculating on her. He denied ever telling the minor's mother he found prepubescent girls attractive. He did not recognize People's exhibit 16 and did not know who took that photograph. He installed Evidence Eliminator on his computer for his sign business, not to erase child pornography or inappropriate photographs of the minor. Defendant could not think of any reason why the minor would accuse him of sexual abuse.

(ECF No. 13-7 at 6-15); People v. Harlow, No. C073330, 2016 WL 73637, at *1-3 (Cal. Ct. App. Feb. 25, 2016).

## II.   Procedural Background

### A.   Judgment

A jury convicted petitioner of twelve counts of lewd and lascivious acts with a child under fourteen years of age, three counts of lewd and lascivious acts with a child who was fourteen years of age and one count of using a minor to perform prohibited acts. (ECF No. 13-7 at 1.) The trial court imposed an aggregate prison term of thirty years and eight months. (Id. at 6.)

4

1

**B.  State Appeal, State Habeas, and Federal Proceedings**

2        Petitioner timely appealed his convictions, raising grounds one through three discussed

3   herein. On February 25, 2016, the California Court of Appeal for the Third Appellate District

4   rejected the claims and affirmed the judgment. Petitioner sought review in the California Supreme

5   Court. (ECF No. 13-8.) On May 11, 2016, the California Supreme Court summarily denied

6   review. (ECF No. 13-9.)

7        On September 27, 2016, petitioner filed his first habeas corpus petition in this court. <u>See</u>

8   <u>Harlow v. People of the State of California</u>, No. 2:16-cv-02306. The petition was dismissed

9   because not all claims were exhausted.

10       On January 19, 2017, petitioner sought habeas corpus relief in the California Court of

11   Appeal, Third Appellate District, raising therein the claim that is ground four of this petition.

12   (ECF No. 13-10.) The state court of appeal summarily denied the petition on January 26, 2017.

13   (ECF No.13-11.) On February 16, 2017, petitioner presented the same claim to the California

14   Supreme Court. (ECF No. 13-12.) The California Supreme Court summarily denied the petition

15   on April 12, 2017. (ECF No. 13-13.)

16       The present petition was filed on April 24, 2017. (ECF No. 1.) Respondent has filed an

17   answer. (ECF No. 12.)

18       **STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS**

19       An application for a writ of habeas corpus by a person in custody under a judgment of a

20   state court can be granted only for violations of the Constitution or laws of the United States. 28

21   U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or

22   application of state law. <u>See</u> <u>Wilson v. Corcoran</u>, 562 U.S. 1, 5 (2010); <u>Estelle v. McGuire</u>, 502

23   U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000).

24       Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

25   corpus relief:

26
27
An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted
with respect to any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim –

28

5

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously

or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact-finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact

1   or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459

2   F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

3          If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews

4   the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see

5   also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc). For claims upon which a

6   petitioner seeks to present evidence, the petitioner must meet the standards of 28 U.S.C. §

7   2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State

8   court proceedings" and by meeting the federal case law standards for the presentation of evidence

9   in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

10         This court looks to the last reasoned state court decision as the basis for the state court

11  judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

12  "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from

13  a previous state court decision, [this court] may consider both decisions to 'fully ascertain the

14  reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

15  banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim

16  has been presented to a state court and the state court has denied relief, it may be presumed that

17  the state court adjudicated the claim on the merits in the absence of any indication or state-law

18  procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be

19  overcome by showing "there is reason to think some other explanation for the state court's

20  decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

21  Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

22  expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

23  the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013).

24  When it is clear that a state court has not reached the merits of a petitioner's claim, the deferential

25  standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court reviews the

26  claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.

27  2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

28  ////

8

1    **ANALYSIS**

2         Petitioner asserts four grounds for relief: (1) the state court's admission of evidence of

3    uncharged sexual offenses violated state law and his Fourteenth Amendment due process rights,

4    and counsel's failure to object constituted ineffective assistance; (2) the state court's admission of

5    CSAAS evidence violated his Fourteenth Amendment due process rights, and counsel's failure to

6    object on due process grounds constituted ineffective assistance; (3) the use of a hypothetical

7    question to which defense counsel did not object during expert testimony violated his Sixth and

8    Fourteenth Amendment rights; and (4) trial counsel further rendered ineffective assistance by

9    failing to properly prepare for trial. (ECF No. 1.)

10   **I.        Admission of Evidence of Uncharged Sexual Conduct**

11        In his first ground, petitioner claims the admission of evidence of uncharged sexual

12   conduct pursuant to section 1108 of the California Evidence Code violated state law and his right

13   to due process under the Fourteenth Amendment. Petitioner further claims his trial counsel

14   rendered ineffective assistance in failing to properly object. (ECF No. 1 at 9-10.)

15        California Evidence Code section 1108 provides, in pertinent part, "[i]n a criminal action

16   in which the defendant is accused of a sexual offense, evidence of the defendant's commission of

17   another sexual offense or offenses is not made inadmissible by Section 1101 [prohibiting

18   evidence of a person's character or a trait of his or her character], if the evidence is not

19   inadmissible pursuant to Section 352." Cal. Evid. Code § 1108(a). Under California Evidence

20   Code section 352, evidence is inadmissible "if the probative value of the evidence is substantially

21   outweighed by the probability that its admission will necessitate undue consumption of time or

22   create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

23   Cal. Evid. Code § 352.

24        Petitioner challenges statements by the mother of the minor that (1) she "had at some time

25   in the past seen child pornography on his computer" and (2) "[petitioner] admitted to her that he

26   found prepubescent girls attractive." (ECF No. 1 at 9.) Petitioner contends evidence his wife saw

27   child pornography on his computer should have been excluded under the balancing test of

28   California Evidence Code section 352 since the images his wife allegedly saw were not

9

1  themselves admitted. As to the evidence that petitioner had stated he found prepubescent girls

2  attractive, petitioner argues it should not have been admitted under California Evidence Code

3  section 1108 because it was "a mere statement of one's thoughts", which is not a crime, and his

4  trial attorney failed to object on this basis. (ECF No. 1 at 9-10.)

5      **A.  State Court Opinion**

6         Petitioner raised this claim in his direct appeal. In the last reasoned state court decision,

7  the California Court of Appeal considered and rejected the claim:

8         A

> The People moved in limine to admit evidence that the mother saw defendant looking at child pornography on his computer, and that defendant admitted he found prepubescent girls attractive. The People sought to admit the evidence under Evidence Code section 1101, subdivision (b) to show intent, and under Evidence Code section 1108 to show defendant's propensity to commit sexual offenses like those charged in this case and that defendant committed the charged offenses.

> The trial court conducted an evidentiary hearing to decide the People's motion. The mother testified at that hearing that she may have lied to police about seeing child pornography on defendant's computer and about defendant admitting he found prepubescent girls attractive. She claimed she was distraught and wanted defendant to "rot in jail for the rest of his life" when she made her statements to police. The mother said she still loved defendant and wanted him to go home.

> The prosecutor played audio recordings of the statements the mother provided to police. The mother identified her voice on the audio recordings. In one recorded interview, the mother said she saw defendant looking at "child porn" on his computer. She knew what she saw was "child porn" because what she saw made her uncomfortable. The images she saw were of naked "pre-puberty" girls, that is, girls who looked like they were eight to 10 years old who "were not developed." In another recorded interview, the mother said she confronted defendant about seeing child pornography on his computer and defendant did not deny it. The mother again described the images she saw as images of naked "pre-puberty" girls. She specified the girls in the images had not started to develop breasts and had no pubic hair. The mother said defendant told her he found girls that age attractive. The mother said the girls in the images were around the minor's age and younger.

> After hearing argument from counsel, the trial court ruled the proffered evidence was admissible under Evidence Code section 1108, but not under Evidence Code section 1101, subdivision (b).

> ////

B

Defendant argues that on its face, Evidence Code section 1108 violates the due process clause of the United States Constitution. Defendant did not raise the due process claim in the trial court, but even if it is not forfeited, the claim lacks merit. The California Supreme Court has rejected a due process challenge to Evidence Code section 1108, holding that a trial court's discretion to exclude propensity evidence under Evidence Code section 352 saves Evidence Code section 1108 from a due process challenge. (*People v. Falsetta* (1999) 21 Cal.4th 903, 915–919 (*Falsetta*); *see People v. Wilson* (2008) 44 Cal.4th 758, 796–797.)

Defendant acknowledges this court is bound by the Supreme Court's decision, but states he "offers the present analysis to preserve his ability to take his challenge to a higher court if need be." We follow *Falsetta* and reject defendant's claim. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

C

Defendant also contends his alleged statement that he found prepubescent girls attractive is not admissible under Evidence Code section 1108 because the alleged statement is not a sexual offense.

The People argued in the trial court that defendant committed the uncharged crime of possession of child pornography in violation of section 311.11. That statute prohibits the knowing possession or control of "any matter ... that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under 18 years of age, knowing that the matter depicts a person under 18 years of age personally engaging in or simulating sexual conduct." (§ 311.11, subd. (a).) "'Sexual conduct' means any of the following, whether actual or simulated: sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner, whether or not any of the above conduct is performed alone or between members of the same or opposite sex or between humans and animals. An act is simulated when it gives the appearance of being sexual conduct." (§ 311.4, subd. (d).)

On appeal the Attorney General argues defendant's alleged admission was offered to show defendant knowingly possessed child pornography; the admission was not offered as "stand alone propensity evidence." The Attorney General points out that the trial court's uncharged conduct instructions referenced the crime of possession of child pornography only. The trial court did not instruct the jury on an uncharged offense with regard to defendant's alleged admission.

*////*

Defendant forfeited his appellate claim by not raising it in the trial court. (Evid. Code, § 353, subd. (a); *People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1099; *People v. Pierce* (2002) 104 Cal.App.4th 893, 898.) Notwithstanding forfeiture, we agree with the Attorney General on the merits of defendant's claim. Defendant's alleged statement that he found young girls attractive was not offered as a sexual offense separate from possession of child pornography. Defendant's alleged statement is probative of whether defendant knowingly possessed images of nude prepubescent girls and whether the images were for the purpose of sexual stimulation of the viewer. We do not consider defendant's ineffective assistance of counsel claim because we considered the merits of his claim that his alleged statement is not a sexual offense and concluded there is no error.

D

Defendant further argues that the trial court abused its discretion in admitting the uncharged sexual conduct evidence under Evidence Code section 352.

In general, evidence of a defendant's conduct other than what is currently charged is not admissible to prove that the defendant has a criminal disposition or propensity. (Evid. Code, § 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.) But as we have explained, in a case where the defendant is charged with a sexual offense, Evidence Code section 1108 authorizes the admission of evidence of the defendant's other sexual offenses if the evidence is not inadmissible under Evidence Code section 352.

In enacting Evidence Code section 1108, the Legislature recognized "'sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial[, thus,] often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations.'" (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160, 1164; *Falsetta*, *supra*, 21 Cal.4th at p. 911.) Evidence Code section 1108 allows the trier of fact to consider uncharged sexual conduct evidence as evidence of the defendant's propensity to commit sexual offenses in evaluating the defendant's and the victim's credibility and in deciding whether the defendant committed the charged sexual offense. (*Villatoro*, *supra*, 54 Cal.4th at pp. 1160, 1164, 1166–1167; *Falsetta*, *supra*, 21 Cal.4th at pp. 911–912, 922.)

However, uncharged sexual conduct evidence is inadmissible if the probative value of the evidence is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid. Code, §§ 352, 1108, subd. (a).) The probative value of uncharged sexual conduct evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity between the uncharged and charged acts, and the independent sources of evidence in each offense. (*Falsetta*, *supra*, 21 Cal.4th at p. 917.) The prejudicial impact of uncharged sexual conduct evidence is reduced if the uncharged act resulted in a criminal conviction and a substantial

12

prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the uncharged act, and that the jury's attention would not be diverted by having to determine whether defendant committed the uncharged act. (*Ibid.*) We review a trial court's Evidence Code section 352 determination under the deferential abuse of discretion standard. (*People v. Avila* (2014) 59 Cal.4th 496, 515 (*Avila*).)

Defendant says evidence that he looked at child pornography had no probative value because the mother's description was too generalized to permit any conclusion about the exact content of the images she saw, and labeling the images as child pornography in the absence of the actual images was highly inflammatory. Defendant appears to challenge the trial court's preliminary determination that the mother's statements to police were sufficient for a jury to find, by a preponderance of the evidence, that defendant committed a sexual offense.

A "'[trial] court should exclude the proffered evidence only if the "showing of preliminary facts is too weak to support a favorable determination by the jury."'" (*People v. Jandres* (2014) 226 Cal.App.4th 340, 353.) We review the trial court's determination of this preliminary fact for abuse of discretion. (*Ibid.*)

The prosecutor had the burden to prove the uncharged section 311.11 violation by a preponderance of the evidence. (*People v. Cottone* (2013) 57 Cal.4th 269, 286–287; *People v. Reliford* (2003) 29 Cal.4th 1007, 1015–1016.) Preponderance of evidence means the evidence on one side has more convincing force than that opposed to it. (*People ex rel. Brown v. Tri–Union Seafoods, LLC* (2009) 171 Cal.App.4th 1549, 1567; *see People v. Williams* (1920) 184 Cal. 590, 594 [preponderance means evidence on one side "'outweighs, preponderates over, is more than, the evidence on the other side, not necessarily in number of witnesses or quantity, but in its effect on those to whom it is addressed'"].)

The trial court said the mother's testimony at the evidentiary hearing was confusing in that she said she could not remember what she saw and what defendant said. The trial court concluded, however, the fairest implication from the evidence was the mother made her statements to police before she had time to reflect and fabricate. The trial court said it would be up to the jury to decide what to make of the mother's testimony. The trial court impliedly ruled a jury could reasonably find that the mother's statements to police were credible and that such statements proved by a preponderance of the evidence that defendant violated section 311.11. Based on our review of the record, we cannot say the proffered evidence was too weak to support a jury finding, by a preponderance of the evidence, that defendant violated section 311.11. We find no error in this regard.

We also conclude defendant fails to demonstrate error under Evidence Code section 352. Evidence that defendant knowingly possessed images of naked young girls and that he found those girls attractive had some tendency in reason to show that defendant was predisposed to engage in the charged sexual offenses. (*Avila, supra,*

59 Cal.4th at p. 519 [evidence that the defendant possessed child pornography was probative of his intent to commit lewd acts on the minor]; *People v. Memro* (1995) 11 Cal.4th 786, 864–865, abrogated on a different ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 638–639, fn. 18 [possession of child pornography was admissible to show the defendant had a sexual attraction to young boys and intended to act on that attraction]; *People v. Yovanov* (1999) 69 Cal.App.4th 392, 404–405 [possession of pornographic magazines containing articles about fathers having sex with their daughters indicated the defendant's continuing interest in deviant sexual activity].) To establish the count one through 15 charges of lewd and lascivious acts with the minor, the People had to prove defendant committed prohibited acts with the intent of arousing, appealing to, or gratifying his or the minor's lust, passions, or sexual desires. (§ 288, subds. (a), (c).) To establish the count 16 charge, the People had to prove defendant knowingly used the minor to pose for a photograph involving sexual conduct, such as the exhibition of the genitals or pubic or rectal area for the purpose of the viewer's sexual stimulation. (§ 311.4, subd. (c).) Defendant's commission of the uncharged section 311.11 offense is probative of whether defendant possessed the requisite lewd intent in counts one through 15 and, with regard to count 16, whether he posed the minor for a prohibited sexual purpose. (*Avila*, *supra*, 59 Cal.4th at p. 519; *Memro*, *supra*, 11 Cal.4th at pp. 864–865.)

The charged and uncharged acts involve sexual interest in young girls or sexual gratification from conduct involving such girls. The similarity between the charged and uncharged offenses is a factor for the trial court to consider in weighing the probative value and prejudicial impact of the uncharged conduct evidence. (*Falsetta*, supra, 21 Cal.4th at p. 917; *People v. Robertson* (2012) 208 Cal.App.4th 965, 991 (*Robertson*).)

Evidence of the uncharged offense is also probative because defendant denied engaging in any sexual acts with the minor. At trial, defendant's counsel accused the minor of lying. He argued the minor's behavior did not indicate she had been sexually abused. He pointed out inconsistencies in the minor's reports concerning molestation. He also argued there was no semen evidence, no trace of the photographs the minor said defendant took of her, and no corroborating witness. Uncharged sexual offense evidence is highly probative where the defendant denies the charged offense occurred and there is no forensic evidence proving the charged offense occurred. (*Robertson*, *supra*, 208 Cal.App.4th at p. 993; *People v. Hollie* (2010) 180 Cal.App.4th 1262, 1275; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 (*Waples*).)

Defendant argues the uncharged act is not similar to the charged offenses because the minor was not a prepubescent girl when defendant allegedly molested her. Defendant cites the minor's testimony that he began to molest her when she was 11 years old, and the molestation continued until she was 15 years old. However, defendant fails to cite the portion of the record supporting his conclusion about when the minor reached puberty. We will not consider claims made without citation to the record. (*People v. Myles*

1    (2012) 53 Cal.4th 1181, 1222, fn. 14 (*Myles*); *Miller v. Superior*
2    *Court* (2002) 101 Cal.App.4th 728, 743.)

3    Defendant further claims, in summary fashion, that the uncharged
     conduct is remote in time. Defendant forfeited the claim by failing to
     develop it with analysis and citation to authority. (*People v. Freeman*
4    (1994) 8 Cal.4th 450, 482, fn. 2; *People v. Galambos* (2002) 104
     Cal.App.4th 1147, 1159.) Were we to consider the claim on its
5    merits, we could not say the uncharged conduct (which occurred
     approximately 11 years prior to trial and about five years before
6    defendant began to inappropriately touch the minor) is too remote or
     the gap between the uncharged act and the beginning of the charged
7    conduct is so significant as to reduce the probative value of the
     uncharged conduct evidence. (*People v. Ewoldt* (1994) 7 Cal.4th 380,
8    405 [uncharged act occurred 12 years prior to trial]; *People v. Branch*
     (2001) 91 Cal.App.4th 274, 278, 281, 284 [uncharged sexual acts
9    committed over 30 years before the charged offenses occurred were
     properly admitted under Evidence Code sections 1101 and 1108];
10   *Waples*, *supra*, 79 Cal.App.4th at pp. 1392–1393, 1395 [uncharged
     sexual acts that occurred 18 to 25 years before the charged offenses
11   were not too remote for purposes of Evidence Code section 352];
     *People v. Soto* (1998) 64 Cal.App.4th 966, 977–978, 990–992
12   [uncharged sexual conduct that occurred 20 to 30 years before the
     trial were properly admitted under Evidence Code sections 1108 and
13   352].)

14   Defendant did not argue in the trial court that the uncharged conduct
     evidence is unduly prejudicial because he was not convicted of that
15   conduct. Thus, the trial court did not address whether the lack of a
     conviction for the uncharged conduct would unduly prejudice
16   defendant. The claim is forfeited. (*People v. Abel* (2012) 53 Cal.4th
     891, 924 ["'What is important is that the objection fairly inform the
17   trial court, as well as the party offering the evidence, of the specific
     reason or reasons the objecting party believes the evidence should be
18   excluded, so the party offering the evidence can respond
     appropriately and the court can make a fully informed ruling.'"].)
19
     Nonetheless, we would reject the claim on its merits. We found
20   nothing in the record showing the jury was made aware of or
     considered the lack of a conviction for the uncharged offense. The
21   prosecutor and defense counsel's closing argument discussions about
     the uncharged conduct evidence do not refer to whether defendant
22   was prosecuted or punished for the uncharged act. Additionally, the
     trial court instructed the jury on the limited use of uncharged conduct
23   evidence. The trial court also instructed the jury on the elements of
     each charged offense, and said the People must prove each charge
24   beyond a reasonable doubt and the uncharged conduct evidence does
     not, by itself, prove defendant was guilty of the charged offenses. As
25   instructed, the jury was not permitted to convict defendant of the
     current charges simply because he previously committed a sexual
26   offense. The instructions counterbalanced any risk the jury might
     punish defendant for his uncharged act. (*Falsetta*, *supra*, 21 Cal.4th
27   at p. 920; *People v. Frazier* (2001) 89 Cal.App.4th 30, 42.)

28   ////

15

1    Defendant has not demonstrated that the trial court abused its
     discretion in admitting the uncharged sexual conduct evidence.
2

3    (ECF No. 13-7 at 6-15.)

4       **B. Discussion**

5          **1. Evidentiary Admission**

6       Fundamentally, except as to the due process challenge, petitioner's first claim contends

7    the state court erred in its application of state evidentiary rules, specifically California Evidence

8    Code sections 352 and 1108. It is well established, however, that alleged errors of state law do not

9    warrant federal habeas relief. E.g., Estelle, 502 U.S. at 67. Even if erroneous, the state court's

10   evidentiary rulings under sections 352 and 1108 of the California Evidence Code are grounds for

11   federal habeas relief only if the error rendered the state proceedings so fundamentally unfair as to

12   violate due process. Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Jammal v. Van de

13   Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Estelle, 502 U.S. at 68.

14      To the extent petitioner challenges California Evidence Code section 1108 as violating

15   due process on its face, the claim fails. An evidentiary rule allowing admission of prior sexual

16   offenses to show propensity to commit a charged sexual offense does not violate due process if

17   the evidence remains subject to balancing for prejudice. See United States v. LeMay, 260 F.3d

18   1018, 1026-27 (9th Cir. 2001) (holding there is nothing "inherently unfair" about Federal Rule of

19   Evidence 414 allowing prior acts of child molestation to show propensity). As noted by the state

20   appellate court in rejecting petitioner's claim, propensity evidence admitted under California

21   Evidence Code section 1108 remains subject to balancing for prejudice under California Evidence

22   Code section 352. (ECF No. 13-7 at 7.) This saves section 1108 from a facial due process

23   challenge. See LeMay, 260 F.3d at 1026-27; Baker v. Pliler, No. C 02-5210 VRW, 2004 U.S.

24   Dist. LEXIS 22035, *62-63 (N.D. Cal. Oct. 5, 2004) (rejecting facial due process claim to

25   California Evidence Code section 1108 based on the balancing for prejudice of California

26   Evidence Code section 352).

27      Petitioner does not develop an argument explaining how his due process rights were

28   violated. He also does not identify any Supreme Court holding supporting his claim. A federal

16

court sitting in habeas corpus should not grant relief based on petitioner's vague references to the principles of due process.

The Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by 538 U.S. 188 (2003); see also Estelle, 502 U.S. at 75 n. 5 (1991) (declining to reach the issue); Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (denying the petitioner's habeas claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because the asserted right has not been clearly established by the Supreme Court, as required by AEDPA); Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006) (same).

Since it is an open question under Supreme Court precedent whether the admission of propensity evidence may violate due process, federal habeas relief cannot lie for petitioner's claim that the admission of his wife's statements about seeing child pornography on his computer, and that he told her he found prepubescent girls attractive, violated due process. See Foote v. Sue Del Papa, 486 F.3d 1166, 1168-69 (9th Cir. 2007) (holding that under the AEDPA, a claim fails if it implicates an "open question" in the Supreme Court's jurisprudence). On the same basis, the state court's rejection of the due process claim in petitioner's first ground for relief is not contrary to or an unreasonable application of clearly established United States Supreme Court precedent. See 28 U.S.C. § 2254(d).

### 2. Ineffective Assistance of Counsel

Petitioner contends his trial counsel rendered ineffective assistance in failing to object to the admission of evidence of his statement that he found young girls attractive. (ECF No. 1 at 10.) This evidence was admitted in the form of an audio recording of statements the mother provided to police. (ECF No.13-7 at 7.) The mother identified her voice on the audio recordings. (Id.) In one recorded interview, the mother said she confronted petitioner about seeing child pornography on his computer and he did not deny it. (Id.) At a subsequent interview, the mother said when she

17

1   confronted petitioner about the child pornography she saw, he said he found girls that age

2   attractive. (Id.) Petitioner contends his trial counsel should have objected to the admission of the

3   latter evidence of the statement because a "mere statement of one's thoughts" does not constitute

4   a crime under California Evidence Code section 1108. (ECF No. 1 at 10.)

5        To demonstrate a denial of the Sixth Amendment right to the effective assistance of

6   counsel, a petitioner must establish that counsel's performance fell below an objective standard of

7   reasonableness, and that he suffered prejudice from the deficient performance. Strickland v.

8   Washington, 466 U.S. 668, 690 (1984). Deficient performance requires a showing that counsel's

9   performance was "outside the wide range of professionally competent assistance." Id. at 687 &

10   697. Prejudice is found where there is a reasonable probability that, but for counsel's

11   unprofessional errors, the result of the proceeding would have been different. Id.

12        Here, the state court reasonably rejected petitioner's ineffective assistance claim premised

13   on counsel's failure to object to the challenged statement that petitioner said he found young girls

14   attractive. Although petitioner may have an arguable basis to claim that his alleged statement does

15   not constitute a crime under California law such that it was itself an uncharged offense within the

16   meaning of section 1108 of the California Evidence Code, his presentation of the ineffective

17   assistance claim fails to recognize the state appellate court upheld admission of this statement not

18   as an independent crime under section 1108, but rather, as evidence he knowingly possessed child

19   pornography, which was the sole independent crime admitted under section 1108. (ECF No. 13- 7

20   at 9 ["Defendant's alleged statement that he found young girls attractive was not offered as a

21   sexual offense separate from possession of child pornography. Defendant's alleged statement is

22   probative of whether defendant knowingly possessed images of nude prepubescent girls and

23   whether the images were for the purpose of sexual stimulation of the viewer."].) The record

24   supports the state court's conclusion that the statement at issue was not itself admitted as an

25   independent crime under section 1108. Significantly, the jury instructions on uncharged sexual

26   conduct referred to the crime of possession of child pornography, only, as the sole identified

27   uncharged offense. (ECF No. 13-3 at 146-47 (IRT 414-15).) The jury instructions on uncharged

28   sexual conduct did not inform the jury that the statement at issue was an uncharged offense. (Id.)

1   Under these circumstances, petitioner fails to demonstrate a successful objection under

2   California Evidence Code section 1108, specifically, to the admission of his alleged statement he

3   found young girls attractive would have resulted in exclusion of the evidence. Thus, petitioner

4   fails to show deficient performance or that prejudice under Strickland, 466 U.S. at 690, resulted.

## II.   Admission of CSAAS evidence

6   In his second ground, petitioner claims the trial court's decision to allow the prosecution's

7   expert witness, Dr. Urquiza, to testify regarding Child Sexual Abuse Accommodation Syndrome

8   (CSAAS) violated his Fourteenth Amendment due process rights. Petitioner argues the CSAAS

9   tool is "junk science" without general acceptance in the relevant scientific community. (ECF No.

10  1 at 12.) Petitioner asserts the CSAAS evidence is irrelevant and deals with matters not beyond

11  common knowledge of jurors. (Id.) Petitioner claims his trial counsel's failure to object to the

12  admission of CSAAS evidence on due process grounds constituted ineffective assistance of

13  counsel. (ECF No. 1 at 12-13.)

### A.  State Court Opinion

15  The California Court of Appeal rejected this claim on direct appeal:

16          A

17          Defendant moved in limine to exclude the proposed testimony of Dr.
            Urquiza under Evidence Code section 352. Defendant argued Dr.
18          Urquiza's proposed testimony would not assist the jury because
            CSAAS was a "very vague theory" and victims exhibited different
19          symptoms. Defendant said it was up to the jury, not Dr. Urquiza, to
            determine whether the minor was credible and whether defendant
20          molested the minor. Defendant also argued Dr. Urquiza's proposed
            testimony was not relevant because CSAAS was based on cases
21          where corroborative evidence was present, but there was no
            corroborative evidence in this case.
22
            The People countered that Dr. Urquiza's proposed testimony would
23          give the jury tools to understand whether the minor was credible. The
            People offered Dr. Urquiza's testimony to dispel myths that child
24          sexual abuse victims disclosed the abuse immediately and did not
            continue to love their abuser.
25
            The trial court admitted Dr. Urquiza's testimony. It said the doctor's
26          testimony would help the jury understand why the minor did not
            disclose the abuse for a long time and why she professed feelings of
27          love for her abuser. The trial court subsequently instructed the jury,
            pursuant to CALCRIM No. 1193, that Dr. Urquiza's testimony about
28          CSAAS was not evidence that defendant committed any of the

charged crimes. The trial court told the jury to consider Dr. Urquiza's testimony only for the purpose of deciding whether the minor's conduct was not inconsistent with the conduct of someone who had been molested, and in evaluating the minor's credibility.

The jury heard the testimony of the minor and her mother before hearing from Dr. Urquiza. The minor and her mother's testimonies showed the minor waited four years before disclosing that defendant had sexually abused her. The minor testified she still loved defendant even though he had molested her. The mother testified, on cross-examination, that the minor never seemed uncomfortable or fearful with defendant, and the minor did not use the lock on her bedroom door. The mother said she doubted the minor's allegations of sexual abuse because the minor enjoyed spending time with defendant, always hugged defendant, and wanted to sit next to him on the couch.

Dr. Urquiza explained CSAAS was a tool developed to educate therapists about common characteristics of children who had been sexually abused. Dr. Urquiza clarified that CSAAS was not a test or diagnostic tool to determine whether a child had in fact been molested. He said CSAAS assumed a child had been sexually abused.

Dr. Urquiza described the five parts of CSAAS: secrecy, helplessness, entrapment and accommodation, delayed and unconvincing disclosure, and retraction. He said a child sexual abuse victim may not report the abuse for a variety of reasons, including feelings of shame and fear of losing the affection the abuser provided. Dr. Urquiza explained it was not uncommon for a child sexual abuse victim to love her abuser despite the abuse.

Dr. Urquiza told the jury research showed a child sexual abuse victim typically did not protect herself from abuse when the abuser was someone with whom the victim had an ongoing relationship. And it was a myth that a child sexual abuse victim will take measures to protect herself.

With regard to accommodation, Dr. Urquiza explained some children coped with sexual abuse by disengaging from their feelings. Those children described their experience of being sexually abused without emotion or with a flat affect.

With regard to delayed and unconvincing disclosure, Dr. Urquiza said it was common for a child sexual abuse victim to delay reporting the abuse for a significant period of time, and a child victim usually disclosed later if she lived in the same house as the abuser. Dr. Urquiza further explained that child victims sometimes provided vague and brief accounts initially, and then gave more details when they felt more comfortable about disclosing. Dr. Urquiza also said it was a myth that children wanted to remember what happened to them and, thus, remembered details about their abuse. He said children typically had difficulty remembering the frequency, duration, and details of an act, especially if an act happened many times and they kept the abuse secret.

With regard to recantation, Dr. Urquiza said research showed 20 to 25 percent of children who disclosed later recanted, and a child sexual abuse victim may recant because of family pressure or because the child still loved the abuser.

B

Evidence Code section 801, subdivision (a), permits the introduction of testimony by a qualified expert when that testimony is related to a subject that is sufficiently beyond common experience that the opinion of the expert would assist the trier of fact. "'[T]he admissibility of expert opinion is a question of degree. The jury need not be wholly ignorant of the subject matter of the opinion in order to justify its admission; if that were the test, little expert opinion testimony would ever be heard. Instead, the statute declares that even if the jury has some knowledge of the matter, expert opinion may be admitted whenever it would 'assist' the jury. It will be excluded only when it would add nothing at all to the jury's common fund of information, i.e., when "the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness."'" (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1299–1300 (*McAlpin*).) We review a trial court's decision to admit expert testimony for abuse of discretion. (*Id.* at p. 1299; *People v. Wells* (2004) 118 Cal.App.4th 179, 186.)

This and other Courts of Appeal have concluded that although inadmissible to show that a child has been sexually abused, CSAAS evidence is admissible for the limited purpose of dispelling misconceptions about how child victims react to sexual abuse. (*People v. Perez* (2010) 182 Cal.App.4th 231, 245 (*Perez*); *In re S.C.* (2006) 138 Cal.App.4th 396, 418; *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744 (*Patino*); *People v. Housley* (1992) 6 Cal.App.4th 947, 954–957 (*Housley*); *People v. Harlan* (1990) 222 Cal.App.3d 439, 449–450; *People v. Bowker* (1988) 203 Cal.App.3d 385, 391–392 (*Bowker*) [setting forth limitations on the admission of CSAAS evidence]; *People v. Gray* (1986) 187 Cal.App.3d 213, 217–218 (*Gray*).) "'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.'" (*McAlpin*, *supra*, 53 Cal.3d at p. 1301.) The California Supreme Court in *McAlpin*, *supra*, 53 Cal.3d 1289 and *People v. Brown* (2004) 33 Cal.4th 892 (*Brown*) approved *Bowker*, *supra*, 203 Cal.App.3d 385 and other cases permitting limited admissibility of CSAAS evidence. (*Brown*, *supra*, 33 Cal.4th at pp. 905–907; *McAlpin*, *supra*, 53 Cal.3d at pp. 1301–1302.)

Defendant does not contend the trial court admitted CSAAS evidence outside the bounds articulated in *Bowker.* Instead, he argues CSAAS evidence is not admissible because the premise underlying its admissibility—that people commonly believe certain myths about child sexual abuse—is no longer valid. Defendant claims intense media discussion about child sexual assault cases has rendered the subjects addressed by CSAAS within the common knowledge of the typical juror; thus, CSAAS is no longer the proper subject of expert opinion testimony. Defendant also claims CSAAS is junk science

and is not generally accepted in the relevant scientific community as a diagnostic tool for making child sexual abuse determinations.

Defendant fails to cite any portion of the record supporting his assertions that misconceptions about child sexual abuse and child sexual abuse victims no longer exist, that the subjects CSAAS addresses are sufficiently within common experience that expert opinion would not assist the trier of fact, or that CSAAS is junk science. For this reason, we need not consider his claims. (*Myles*, supra, 53 Cal.4th at p. 1222, fn. 14; *Miller v. Superior Court*, *supra*, 101 Cal.App.4th at p. 743) Additionally, defendant did not raise the claims he urges on appeal in the trial court. He did not, therefore, preserve the claims for appellate review. (Evid. Code, § 353, subd. (a); *People v. Seijas* (2005) 36 Cal.4th 291, 302.)

In any event, we found no evidence in the record supporting defendant's assertions. To the contrary, Dr. Urquiza testified people he talked to in his work still did not understand the common characteristics exhibited by victims of child sexual abuse. For example, most people did not understand why a child sexual abuse victim may love her abuser. Dr. Urquiza opined that sexual abuse cases receiving media attention did not educate the public about the experience of child sexual abuse victims.

Moreover, the California Supreme Court has recognized that CSAAS expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse. (*Brown*, *supra*, 33 Cal.4th at pp. 905–906.) This court recognized the same need in *People v. Sandoval* (2008) 164 Cal.App.4th 994 and *In re S.C.*, *supra*, 138 Cal.App.4th 396. And in 2010, the Sixth District Court of Appeal rejected claims nearly identical to those defendant raises in this case. (*Perez*, *supra*, 182 Cal.App.4th at pp. 243–245; *see Gray*, *supra*, 187 Cal.App.3d at p. 220 ['"[T]he subject of child molestation and more particularly, the sensitivities of the victims, is knowledge sufficiently beyond common experience such that the opinion of an expert would be of assistance to the trier of fact.'"].)

Defendant relies principally on *Commonwealth v. Dunkle* (1992) 529 Pa. 168 [602 A.2d 830] (*Dunkle*) to argue CSAAS has not gained general acceptance in the scientific community, is not probative, and does not deal with subjects beyond common experience such as to justify expert opinion testimony. More than 20 years ago, *Dunkle* held that expert testimony concerning typical behavior patterns exhibited by sexually abused children is inadmissible because such evidence was not generally accepted in the field in which it belonged, was not probative of child sexual abuse, and concerned subjects which were within the range of common experience. (*Id.* at pp. 834–838.)

We do not follow *Dunkle* for a number of reasons. Effective August 28, 2012, Pennsylvania permits expert testimony that will assist the trier of fact in understanding victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted. (42 Pa.C.S. § 5920, subd. (b).) It remains to be seen whether CSAAS evidence is admissible in Pennsylvania under the

new statute. Additionally, as an out-of-state case, *Dunkle* is not binding on us. (*People v. Troyer* (2011) 51 Cal.4th 599, 610.) More importantly, the California Supreme Court's approval of Bowker and *McAlpin* in *Brown*, *supra*, 33 Cal.4th 892, implicitly rejected the opinion expressed in *Dunkle* that CSAAS evidence is inadmissible. We adhere to the Supreme Court's view that CSAAS expert testimony is admissible. (*Brown*, *supra*, 33 Cal.4th at pp. 905–906.)

*People v. Robbie* (2001) 92 Cal.App.4th 1075, another case defendant cites, deals with profile evidence, in particular testimony about the conduct and characteristics of those who commit a certain type of rape. (*Id.* at pp. 1084–1085.) Robbie does not discuss CSAAS evidence or the misconceptions relating to child sexual abuse victims.

We also found no evidence in the record that CSAAS is junk science and has been rejected by the scientific community or its creator Dr. Roland Summit. Dr. Urquiza testified there was a lot of research supporting CSAAS. Dr. Urquiza said four individuals wrote two published articles criticizing the unconvincing disclosure and retraction aspects of CSAAS. The doctor did not testify that CSAAS had been rejected in the scientific community or by Dr. Summit. Defendant did not present in the trial court any of the journal articles he cites in his appellate opening brief. With regard to whether CSAAS is generally accepted as a diagnostic tool for making child sexual abuse determinations, Dr. Urquiza clearly stated CSAAS was not a diagnostic tool for determining whether a child had been sexually abused. And the doctor said he did not know the defendant and the alleged victim in this case and was not giving an opinion about whether anyone was sexually abused.

It appears defendant raises a federal due process claim, although he does not clearly articulate the basis for that claim. We understand defendant to contend that the admission of CSAAS evidence violated his right to due process of law and a fair trial because that evidence is not relevant to the charged offenses. We reject such claim. CSAAS evidence is relevant to the minor's credibility, which defendant vigorously challenged at the trial. (*McAlpin*, *supra*, 53 Cal.3d at p. 1302; *In re S.C.*, *supra*, 138 Cal.App.4th at p. 418; *Patino*, *supra*, 26 Cal.App.4th at p. 1745.) The admission of relevant evidence does not violate a defendant's due process rights. (*Estelle v. McGuire* (1991) 502 U.S. 62, 68–70 [116 L.Ed.2d 385, 396–397]; *Patino*, *supra*, 26 Cal.App.4th at p. 1747.) The limited admissibility of CSAAS expert testimony is well-settled. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 418; *Housley*, *supra*, 6 Cal.App.4th at p. 957.) And defendant has not shown how the admission of CSAAS evidence in this case infringed upon his constitutional right to due process of law or a fair trial.

Defendant also argues his trial counsel was ineffective in not raising a due process claim. We do not address defendant's ineffectiveassistance of counsel claim because he has not shown the trial court erred in admitting CSAAS expert testimony.

(ECF No.13-7 at 15-21.)

1

**B. Discussion**

2

    **1. Evidentiary Admission**

3

      Petitioner's challenge to the CSAAS evidence as junk science and improper expert

4

testimony seeks to show the evidence should have been excluded as irrelevant or overly

5

prejudicial. The Supreme Court, however, has made very few rulings regarding the admission of

6

evidence, and, in particular, "has not yet made a clear ruling that admission of irrelevant or

7

overtly prejudicial evidence constitutes a due process violation[.]" Holley v. Yarborough, 568

8

F.3d 1091, 1101 (9th Cir. 2009). The Ninth Circuit has upheld the use of CSAAS evidence in

9

child abuse cases against due process challenges "when the testimony concerns general

10

characteristics of victims and is not used to opine that a specific child is telling the truth." Brodit

11

v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003).

12

      Dr. Urquiza's testimony described CSAAS in general terms, addressing the general

13

characteristics of victims, and he did not opine that the specific minor in this case was telling the

14

truth. (ECF No. 13-3 at 17-64 (IIRT 285-332).) Dr. Urquiza testified he did not know the minor

15

victim in this case. (ECF No. 13-3 at 37 (IIRT 305).) The trial court instructed the jury Dr.

16

Urquiza's testimony about CSAAS was not evidence that petitioner committed any of the charged

17

crimes, and to consider Dr. Urquiza's testimony only for the purpose of evaluating the minor's

18

credibility and in deciding whether the minor's conduct was not inconsistent with the conduct of

19

someone who had been molested. (ECF No. 13-3 at 148 (IIRT 416).) Thus, Dr. Urquiza's

20

testimony complied with the limits set forth by the Ninth Circuit in Brodit, 350 F.3d at 991.

21

      Moreover, petitioner cites no Supreme Court authority to support his claim that the trial

22

court's decision to admit the CSAAS evidence violated his due process rights. Because the

23

Supreme Court has never ruled that admission of irrelevant or overtly prejudicial evidence

24

constitutes a due process violation," Holley, 568 F.3d at 1101, petitioner's claim implicates an

25

"open question" in the Supreme Court's jurisprudence for which federal habeas corpus relief is

26

not available. See 28 U.S.C. § 2254(d); Foote, 486 F.3d at 1168-69.

27

    ////

28

    ////

1

**2.  Ineffective Assistance of Counsel**

2

        Defense counsel challenged the introduction of the CSAAS evidence under California

3

Evidence Code section 352 but did not specifically argue the evidence violated due process. (ECF

4

No. 13-7 at 15.) Petitioner claims his trial attorney rendered ineffective assistance in failing to

5

object to the admission of CSAAS evidence on due process grounds specifically. (ECF No. 1 at

6

12.)

7

        This claim fails because the California Court of Appeal reasonably determined the

8

admission of the CSAAS evidence did not violate due process. (ECF No. 13-7 at 21, citing

9

Estelle, 502 U.S. at 68-70.) See also Brodit, 350 F.3d at 991. Since petitioner cannot show the

10

evidence violated due process such that the trial court would have sustained an objection brought

11

on constitutional grounds, he fails to show that defense counsel's performance was deficient, or

12

that prejudice resulted. See Strickland, 466 U.S. at 690.

13

**III.    Hypothetical Question to the Expert Witness**

14

        Petitioner claims the prosecutor improperly posed to Dr. Urquiza a hypothetical question

15

that mirrored the facts of the case. Defense counsel did not object, and Dr. Urquiza answered the

16

question. Petitioner claims the admission of this evidence invaded the province of the jury and

17

violated his rights under the Sixth and Fourteenth Amendments. (ECF No. 10 at 14-15.)

18

        **A.  State Court Opinion**

19

        The California Court of Appeal rejected this claim on direct appeal:

20

            A

21

            The prosecutor gave Dr. Urquiza the following hypothetical and
            asked the doctor to give his opinion as to whether the behavior in the

22

            hypothetical was common or unusual behavior for a victim of child
            sexual abuse: "We had an 11–year–old girl who had been molested

23

            for four years at the hands of the only father she's ever really known,
            not a biological father, but the only father she's ever known. [¶] At

24

            the age of 15, discloses that she's been abused regularly for the past
            four years, maintains that she still loves her father very much, wants

25

            to see him home, doesn't recant, but tells us that her mother has
            actually been very supportive of her and has always told her to tell

26

            the truth, and comes in and testifies with little emotion. [¶] Is that
            uncommon for a victim of child sexual abuse?" Defendant's trial

27

            counsel did not object to the prosecutor's question.

28

            ////

25

Dr. Urquiza responded that CSAAS relates to common characteristics, not characteristics that occur in every single case. He said the hypothetical contained a lot of the common characteristics: secrecy (not disclosing for four years), helplessness (an ongoing relationship with someone who was bigger and stronger, and flat affect as a way to manage the victim's feelings), and delayed disclosure. Dr. Urquiza clarified he was not saying someone was abused. He said he did not know who the alleged victim was, did not know anything about this case, had never met defendant, and was not at trial to provide any opinion as to whether anyone in that case had been sexually abused.

B

It is improper for an expert to apply CSAAS to the facts of the case and conclude a particular child was molested. (*Bowker*, *supra*, 203 Cal.App.3d at p. 393.) It is also improper for an expert to testify about CSAAS in a manner that directly coincides with the facts of the case. (*Id.* at p. 394; *Gray*, *supra*, 187 Cal.App.3d at p. 218; *People v. Roscoe* (1985) 168 Cal.App.3d 1093, 1100 [expert testimony must be limited to a discussion of victims as a class; the expert must not discuss the witness in the case].) It is error to admit a CSAAS expert's response to hypothetical questions that closely track the facts of the case. (*People v. Jeff* (1988) 204 Cal.App.3d 309, 337–339.)

We agree with defendant that the prosecutor's hypothetical question was improper. However, we conclude no prejudice resulted therefrom because it is not reasonably probable a verdict more favorable to the defendant would have resulted in the absence of the inadmissible evidence. (*People v. Bledsoe* (1984) 36 Cal.3d 236, 252 [applying *People v. Watson* (1956) 46 Cal.2d 818 standard of review to erroneous admission of expert testimony]; *Bowker*, *supra*, 203 Cal.App.3d at p. 395 [same].) The jury could not have reasonably understood from Dr. Urquiza's response to the prosecutor's hypothetical that the minor was sexually abused. The trial court instructed the jury that Dr. Urquiza's testimony was not evidence that defendant committed any of the charged crimes. The doctor testified he did not know the alleged victim, he did not treat her, and he was not rendering an opinion about whether someone was sexually abused. Not knowing who the alleged victim in this case was and not knowing the facts of this case, Dr. Urquiza said he had no basis for rendering an opinion about whether the alleged victim was sexually abused. Dr. Urquiza also told the jury CSAAS was not a diagnostic tool to determine whether a child had in fact been molested. The prosecutor's closing argument repeated that Dr. Urquiza's testimony was not presented for the purpose of determining whether or not the minor had been sexually abused.

Under these circumstances, the jury could not reasonably understand that Dr. Urquiza was providing an opinion about whether the minor was sexually abused. Improper admission of evidence is not reversible error absent a demonstration of prejudice. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the

improper admission or rejection of evidence ... unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; Evid. Code, § 353.)

We need not consider defendant's related ineffective assistance of counsel claim because we conclude the erroneous admission of evidence did not result in prejudice to defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389 [to establish trial counsel was ineffective, the defendant must prove trial counsel's deficient representation resulted in prejudice to the defendant]; *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

(ECF No. 13-7 at 22-24.)

**B. Discussion**

**1. Evidentiary Admission**

Petitioner has not cited any Supreme Court precedent establishing that admission of a hypothetical question to a CSAAS expert that tracks the facts of the case amounts to a due process violation. As set forth, the Supreme Court has never ruled that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ of habeas corpus. Holley, 568 F.3d at 1101.

Although the state appellate court found it was error under state law to allow Dr. Uquiza to answer a hypothetical question that mirrored the facts of the case, the court implicitly rejected petitioner's due process claim because it found petitioner could not show he was prejudiced by the improperly admitted evidence. As set forth, a federal writ is not available for alleged error in the interpretation or application of state law. E.g., Estelle, 502 U.S. at 67-68. An error of state evidentiary law violates federal due process only if "the evidence so fatally infected the proceedings as to render them fundamentally unfair." Jammal, 926 F.2d at 919.

The improper admission of evidence may render a trial fundamentally unfair if "there are no permissible inferences the jury may draw from the evidence." Jammal, 926 F. 2d at 920. A writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 899

1   (1983)). Even if a petitioner makes a showing that there were no permissible inferences to be

2   drawn from the challenged evidence, habeas corpus relief may not be granted unless the

3   admission of the evidence had a "substantial and injurious effect" or influence upon the jury's

4   verdict. Brecht v. Abrahamson, 507 U.S. 619, 622 (1993).

5          Here, Dr. Urquiza did not testify that abuse occurred under the hypothetical

6   circumstances, but rather, that the hypothetical contained a lot of common characteristics of

7   CSAAS. (ECF No. 13-3 at 35-36 (IIRT 303-04).) Although the hypothetical tracked the facts of

8   the case, the evidence did not violate due process because the testimony concerned general

9   characteristics of victims and Dr. Urquiza did not give an opinion as to whether the minor victim,

10  specifically, was telling the truth. See Brodit, 350 F.3d at 991. The evidence also did not violate

11  due process because the jury could have made permissible inferences about the minor's

12  credibility from the hypothetical question. See Jammal, 926 F. 2d at 920.

13         Moreover, the state court reasonably found the admission of the hypothetical question was

14  not sufficiently prejudicial to petitioner where the trial court instructed the jury that Dr. Urquiza's

15  testimony was not evidence that petitioner committed any of the charged crimes, and the doctor

16  testified he did not know the alleged victim, did not treat her, and was not rendering an opinion as

17  to whether she was sexually abused. (ECF No. 13-3 at 148 (IIRT 416).) Dr. Urquiza testified

18  CSAAS was not a diagnostic tool to determine whether a child had in fact been molested. (ECF

19  No. 13-3 at 10-11 (IIRT 284-85).) The prosecutor's closing argument repeated that Dr. Urquiza's

20  testimony was not presented for the purpose of determining whether the minor had been sexually

21  abused. (ECF No. 13-3 at 169 (IIRT 437).) Under these circumstances, viewed in light of the

22  record as a whole, the admission of the evidence cannot be said to have had a "substantial and

23  injurious effect" or influence on the jury's verdict. See Brecht, 507 U.S. at 622.

## 2.  Ineffective Assistance of Counsel

25         It is not clear whether petitioner asserted a separate claim of ineffective assistance of

26  counsel in connection with his third ground for relief. (ECF No. 1 at 14-15 (citing the Sixth

27  Amendment and stating that counsel did not object without stating counsel should have objected

28  or that counsel rendered ineffective assistance.) Petitioner asserted ineffective assistance of

counsel in connection with this ground for relief when he presented the claim on direct appeal. (ECF No. 13-4 at 69 (AOB at 60).) The pro se petition is liberally construed. See Boag v. MacDougall, 454 U.S. 364, 365 (1982). Since petitioner brought this claim under the Sixth Amendment, the petition should be construed to include an ineffective assistance of counsel claim. See Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001) (holding that liberal construction of pro se prisoner habeas petitions is especially important with regard to which claims are presented).

Assuming petitioner did assert an ineffective assistance of counsel claim in connection with his third ground for relief, such a claim fails for the reasons set forth in the preceding section, in that the state appellate court reasonably rejected the claim for lack of prejudice. See Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (holding that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice) (quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds, 385 F.3d 1247 (9th Cir. 2004). Because, as set forth in the preceding section, petitioner cannot show the outcome of his trial would have been different had the evidence at issue not been admitted, petitioner is not entitled to relief on a related ineffective assistance of counsel claim. See Pizzuto, 280 F.3d at 955.

**IV.    Ineffective assistance of counsel**

In his fourth ground, petitioner claims his trial counsel rendered ineffective assistance in failing to properly prepare for trial, including questioning petitioner and obtaining pertinent information vital to the defense. (ECF No. 1 at 18.) Petitioner alleges defense counsel did not properly prepare for trial in that (1) the prosecutor used the website CuteTeenCheaters.com as proof that appellant viewed child pornography, and defense counsel failed to investigate and present evidence showing the website at issue is a legitimate "18 and over website" which did not contain any child pornography; (2) counsel did not call petitioner's 10-year-old son to the stand to corroborate petitioner's testimony that the picture of the minor on his phone was taken by his son; ////

29

(3) counsel only met with petitioner once prior to his testimony; and (4) counsel did not interview certain unidentified witnesses.

### A.  State Court Decision

Petitioner raised this claim in habeas corpus petitions to the California Court of Appeal and the California Supreme Court. (ECF Nos. 13-10, 13-12.) Both courts denied the respective petitions without comment. (ECF Nos. 13-11, 13-13.)

### B.  Discussion

The standard of Strickland, 466 U.S. 668, applies. "Surmounting Strickland's high bar is never an easy task," and review under the AEDPA is doubly deferential. Richter, 562 U.S. at 105. "[T]he pivotal question" for a federal court conducting habeas corpus review under section 2254(d) "is whether the state court's application of the Strickland standard was unreasonable," which "is different from asking whether defense counsel's performance fell below Strickland's standards." Richter, 562 U.S. at 101. The determination to be made, therefore, is not whether counsel acted reasonably but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 105.

First, petitioner has not established that counsel failed to investigate the website. On cross-examination of the deputy in the High Tech Task Force Unit who testified about the CuteTeenCheaters.com website having been visited by someone on petitioner's computer, counsel established the deputy did not actually know what was on the website, whether it was a child pornography website, or whether petitioner had visited that website. (ECF No. 13-2 at 266-67 (IRT 257-58).) Counsel further established the website at issue was one of many pornography websites visited on the computer and it was the only one with "teen" in the name. (ECF No. 13-2 at 268 (IRT 259).) Under these circumstances, there is a reasonable argument that counsel is not shown to have performed deficiently. There is also a reasonable argument that affirmative proof of the website's contents would not have changed the outcome of the case in light of the totality of the evidence, including the minor's testimony that petitioner had molested her.

Petitioner's remaining allegations about trial counsel's performance are conclusory and unsupported. Petitioner has not shown counsel performed deficiently in failing to call his 10-year-

1   old son to the stand, or that prejudice resulted, because petitioner has not established the contents

2   of the testimony his son would have given, or that such testimony was likely to have outweighed

3   the other evidence such that it would have changed the outcome of the case. Similarly, petitioner

4   has not shown that counsel was deficient in meeting with him only once, or that prejudice

5   resulted, as he does not establish what would have happened differently had counsel met with

6   petitioner more frequently. Finally, petitioner has not shown that counsel was deficient in failing

7   to interview unidentified witnesses, or that prejudice resulted. Petitioner fails to identify the

8   witnesses who should have been interviewed or demonstrate any relevant testimony these

9   unidentified witnesses would have offered. Mere speculation that other unidentified witnesses,

10  additional meetings with petitioner, or additional investigation might have yielded helpful

11  information is not enough to establish ineffective assistance because such a claim is merely

12  "theoretical" or "potential" in nature. See generally Bragg v. Galaza, 242 F .3d 1082, 1087 (9th

13  Cir.), amended, 253 F.3d 1150 (9th Cir.2001) (holding that a petitioner's "theoretical" or

14  "potential" conflict of interest does not state a claim for relief premised on an actual conflict).

15       Petitioner's conclusory allegations about trial counsel's performance fail to establish that

16  defense counsel performed deficiently or that the alleged deficient performance was prejudicial.

17  Under these circumstances, relief should be denied. See Richter, 562 U.S. at 101.

**CONCLUSION**

19       Petitioner fails to meet the standards set out in 28 U.S.C. § 2254(d) by showing the state

20  court decision on any claim was contrary to or an unreasonable application of clearly established

21  law as determined by the Supreme Court, or resulted in a decision based on an unreasonable

22  determination of the facts.

23       It is RECOMMENDED that petitioner's petition for a writ of habeas corpus be

24

25  denied.

26       These findings and recommendations will be submitted to the United States District Judge

27  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days

28  after being served with these findings and recommendations, any party may file written

1   objections with the court and serve a copy on all parties. The document should be captioned

2   "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

3   shall be served on all parties and filed with the court within seven (7) days after service of the

4   objections. Failure to file objections within the specified time may waive the right to appeal the

5   District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951

6   F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of

7   appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11,

8   Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability

9   when it enters a final order adverse to the applicant).

10  Dated:  April 13, 2021

13  DEBORAH BARNES
    UNITED STATES MAGISTRATE JUDGE

17  DLB7;
    CKD/Lindsay/DB Habeas/harl0922.fr

32